Case 4:20-cv-04136   Document 39   Filed on 09/29/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF WINDS INTERNATIONAL INC, Plaintiff, | § § § § § § | CIVIL ACTION NO. 4:20-cv-04136 |
| vs. | § § § § § | JUDGE CHARLES ESKRIDGE |
| RICARDO R. ALMANZAR JR, *et al*, Defendants. | § § § § § § | |
| vs. | § § § § | |
| FIRST BANK & Trust d/b/a FIRSTLINE FUNDING GROUP, Third-Party Defendant. | § § § § § § | |

**OPINION AND ORDER
GRANTING MOTION TO DISMISS**

The motion by Defendants Hydro Precision Tubing USA LLC, Hydro Precision Tubing Monterrey LLC, and Hydro Precision Tubing Monterrey Central LLC to dismiss the claims against them for lack of subject matter jurisdiction is granted. Dkt 16.

    1.  Background

Plaintiff Gulf Winds International Inc alleges that Hydro USA, Hydro Monterrey, and Hydro Monterrey Central collectively failed to pay for services it rendered by transporting certain cargo on their behalf. Dkt 1. It refers to them collectively

throughout its complaint simply as *Hydro*. Gulf Winds also refers to the other three Defendants—Ricardo R Almanzar Jr, Almanzar Enterprises National Inc, and Almanzar Enterprises LLC—collectively as *Almanzar*. This makes the narrative quite unclear as to what alleged conduct is attributable to any particular entity. Still, and of necessity, reference hereafter must be to *the Hydro Defendants* and *the Alamanzar Defendants* because there currently isn't any way to distinguish between them.

The Hydro Defendants (as shipper) contracted with the Almanzar Defendants (as freight forwarder/broker) to transport unidentified cargo arriving at the Port of Houston from Qatar to its facility in Pharr, Texas, which is inland from Brownsville. The Almanzar Defendants ultimately subcontracted with Gulf Winds to transport the cargo to Pharr. As such, Gulf Winds transported the cargo from the Port of Houston to Seabrook, Texas, and then further subcontracted with American National Logistics to transport the cargo from Seabrook to the Hydro Defendants' facility in Pharr. Dkt 1 at ¶ 11.

Upon delivery of the goods, Gulf Winds sent a number of invoices totaling nearly $100,000 to the Hydro and Almanzar Defendants for the transportation services. Id at ¶¶ 12–17. The Hydro Defendants apparently deny ever receiving any invoices, but the Almanzar Defendants evidently did receive them. See Dkt 32 at ¶ 12. According to Gulf Winds, the Almanzar Defendants then added their own fees to the invoices and separately billed the Hydro Defendants. Dkt 1 at ¶ 18. The Hydro Defendants contend that the Almanzar Defendants directed them to pay all the transportation fees to Defendant First Bank & Trust, doing business as FirstLine Funding Group, a third-party to which the Almanzar Defendants had assigned their accounts receivable. Dkt 32 at ¶¶ 18, 49. FirstLine agrees with this characterization. Dkt 35 at 3–4. The Hydro Defendants insist that they paid FirstLine and concede never paying Gulf Winds directly. Dkt 32 at ¶¶ 49–50. And it appears that FirstLine used the payment as "partial satisfaction of Almanzar's debt" to it. Dkt 35 at 5.

Gulf Winds alleges that it hasn't received its invoiced amount for the transportation services provided to the Hydro

2

Defendants. Dkt 1 at ¶ 17. It contends that the Hydro Defendants assumed the risk that their funds wouldn't be distributed properly by choosing to pay FirstLine rather than make direct payment. Id at ¶ 18. The Hydro Defendants deny owing Gulf Winds anything and insist that they assumed no such risk. Dkt 18 at 6.

Gulf Winds brought action against the Almanzar and Hydro Defendants in Texas state court in March 2020, asserting claims for breach of contract, unjust enrichment, fraud, conspiracy to defraud, and *quantum meruit*. Dkt 16-1. But it nonsuited that action in December 2021 and brought this one instead. It reasserts claims for breach of contract, *quantum meruit*, and unjust enrichment against the Hydro and Almanzar Defendants, while separately asserting a fraud claim against the Almanzar Defendants and a claim under 49 USC § 13706 against the Hydro Defendants. Dkt 1 at ¶¶ 21–26.

Ricardo Almanzar was served but never answered or otherwise defended in this action. The Clerk entered a default against him in July 2021. Dkts 36, 37. Gulf Winds has provided no return of service of summons as to other two Almanzar entities, but it asserts that they were served through the Texas Secretary of State. Dkt 24 at 3.

The Hydro Defendants moved to dismiss the claims against them for lack of subject matter jurisdiction in February 2021. Dkt 16.

### 2. Legal standard

Federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject matter jurisdiction. The Fifth Circuit holds that such a dismissal is appropriate "'when the court lacks the statutory or constitutional power to adjudicate the claim.'" *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998).

The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that subject matter jurisdiction is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008), citing *Howery*, 243 F3d at 919; *Paterson v Weinberger*, 644 F2d 521, 523 (5th Cir 1981). Indeed, a presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Section 1331 of Title 28 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The *well-pleaded complaint rule* determines whether a particular case arises under federal law. *PCI Transportation Inc v Fort Worth & Western Railroad Co*, 418 F3d 535, 543 (5th Cir 2005) (citation omitted). By this, federal jurisdiction exists "only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Ibid (quotation omitted). And a "federal question exists only where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Board of Commissioners v Tennessee Gas Pipeline Co LLC*, 850 F3d 714, 721 (5th Cir 2017), quoting *Singh v Duane Morris LLP*, 538 F3d 334, 337–38 (5th Cir. 2008). Federal courts should therefore "apply the well-pleaded complaint rule first" before assessing "the substantiality and centrality of the federal issues." Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 3566 (West 3d ed April 2021 Update).

An important corollary to the well-pleaded complaint rule is the *complete preemption doctrine*. Federal preemption is "generally a defensive issue" that doesn't authorize federal question jurisdiction. *Willy v Coastal Corp*, 855 F2d 1160, 1165 (5th Cir 1988); see also *Metropolitan Life Insurance Co v Taylor*, 481 US 58, 63 (1987). But Congress may so completely preempt "a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Ezell v Kansas City Southern Railway Co*, 866 F3d 294, 297 n 2 (5th Cir 2017), quoting *Gutierrez v Flores*, 543 F3d 248, 252 (5th Cir 2008). Thus, "what otherwise appears as merely a state law claim is converted to a

4

claim arising under federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Barrois*, 533 F3d at 330 (internal quotations and alterations omitted); see also *Franks Investment Co v Union Pacific Railroad Co*, 593 F3d 404, 407–08 (5th Cir 2010, *en banc*).

### 3. Analysis

Gulf Winds argues that subject matter jurisdiction exists under 28 USC § 1331 because its claims implicate a federal question under 49 USC §§ 13501 and 14501. Dkt 1 at ¶ 8. It also asserts a single federal claim under 49 USC § 13706. Id at ¶ 21. To the contrary, none of these provisions establish federal question jurisdiction here.

#### a. Section 13501

Gulf Winds cites 49 USC § 13501 a single time as part of its jurisdictional allegations. Dkt 1 at ¶ 8. This is curious because Gulf Winds doesn't reference or assert it in support of an actual cause of action.

Briefly stated, § 13501 grants the Secretary of Transportation and the Surface Transportation Board jurisdiction over "transportation by motor carrier and the procurement of that transportation" if such transportation or procurement satisfies certain conditions. But it doesn't appear to provide for a private cause of action. Nor is it apparent "on the face" of the complaint that any claim brought by Gulf Winds "necessarily depend[s] on the resolution of a substantial question" regarding this section of Title 49. *Board of Commissioners*, 850 F3d at 721. For instance, there's no allegation that this case involves any act or regulation by the Secretary or Board. And at no point does the complaint explain how the jurisdiction of the Secretary and Board relates to either its garden-variety state claims or its federal statutory claim.

Consequently, the single, conclusory citation to 49 USC § 13501 in the complaint cannot serve as the basis for federal question jurisdiction.

#### b. Section 14501

Gulf Winds also cites 49 USC § 14501 just once as part of its jurisdictional allegations. Dkt 1 at ¶ 8. Standing alone, this is again

5

insufficient for the same reasons just stated with respect to § 13501.

But on this Gulf Winds goes on to argue that its state-law claims—breach of contract and related equitable doctrines—are necessarily federal in nature because § 14501 "completely preempts the state of Texas's ability to 'enforce a law, regulation, or other provision having the force and effect of law related to a price.'" Dkt 24 at 6, quoting 49 USC § 14501.

Section 14501 preempts "[s]tate enforcement actions having a connection with, or reference to carrier rates, routes, or services." *Rowe v New Hampshire Motor Transportation Association*, 552 US 364, 370 (2008) (cleaned up), quoting *Morales v Trans World Airlines Inc*, 504 US 374, 384 (1992). But it doesn't preempt "state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner.'" *Rowe*, 552 US at 376, quoting *Morales*, 504 US at 390. Under this standard, it's unlikely that § 14501 preempts the state-law claims brought by Gulf Winds. See *Dan's City Used Cars Inc v Pelkey*, 596 US 251, 252 (2013) (noting that § 14501 tracks air-carrier preemption provisions of Airline Deregulation Act of 1978), and *Lyn-Lea Travel Corp v American Airlines*, 283 F3d 282, 287 (5th Cir 2002) (holding that ADA doesn't preempt routine state-law contract claims); see also *Chatelaine Inc v Twin Modal Inc*, 737 F Supp 2d 638, 642–43 (ND Tex 2010) (holding that § 14501 doesn't preempt breach-of-contract claims), and *Louis M. Marson Jr Inc v Alliance Shippers Inc*, 737 F Supp 2d 326, 335–36 (ED Pa 2020) (collecting cases).

Regardless, "pre-emption, without more, does not convert a state claim into an action arising under federal law." *Taylor*, 481 US at 64, citing *Franchise Tax Board of Cal v Construction Laborers Vacation Trust for Southern Cal*, 463 US 1, 25–27 (1983). Indeed, a party asserting complete preemption must demonstrate that "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right;" and (3) Congress intended the federal cause of action to be exclusive. *Hoskins v Bekins Van Lines*, 343 F3d 769, 775 (5th Cir 2003)

6

(internal quotation marks omitted), quoting *Johnson v Baylor University*, 214 F3d 630, 632 (5th Cir 2000).

In short, Gulf Winds fails to satisfy even the first prong of *Hoskins*, given that § 14501 doesn't contain a civil enforcement provision that creates a cause of action that replaces and protects the state-law contract claims and their equitable counterparts asserted here. Indeed, § 14501 doesn't contain *any* cause of action.

As such, its claims under state law don't arise under federal law and can't serve as the basis for federal question jurisdiction.

### c. Section 13706

Gulf Winds identifies § 13706 as its only federal cause of action—but without specifying it as a basis for federal question jurisdiction. Dkt 1 at ¶ 21; cf id at ¶ 8. But that provision can't confer jurisdiction either independently or as a cause of action that replaces the asserted state law claims.

Section 13706 imposes liability "for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor" when the transportation is "provided by a motor carrier." 49 USC § 13706(a). It's questionable whether this section actually provides for a federal cause of action. At least two courts have determined that it doesn't. See *WEL Inc v Scotts Co*, 2012 WL 12933224, *3–4 (WD Tenn) (addressing jurisdiction pursuant to 28 USC §§ 1331 and 1337); see also *Evans Transportation Services v Northland Services Inc*, 2012 WL 727019, *2 (WD Wash) (citation omitted).

But at least two others have determined that § 13706 does provide a federal cause of action for the collection of freight charges. See *Fracht FWO Inc v TPR Holdings LLC*, 2021 WL 1026130, *2 (SDNY) (addressing jurisdiction pursuant to 28 USC § 1331), citing *GMG Transwest Corp v PDK Labs Inc*, 2010 WL 3718888, *2 (EDNY) (addressing jurisdiction pursuant to 28 USC § 1337). Pertinent here, however, one of the courts that found a federal cause of action to exist emphasized that § 13706 can only "serve as the basis for subject matter jurisdiction" when "a federally-required tariff is involved." *Fracht*,

7

2021 WL 1026130 at *2. The surrounding statutory and regulatory context is in line with this approach. True, § 13706 doesn't expressly state that it's limited to cases involving a federal tariff, but the other provisions of Chapter 137 addressing motor carriers' rates indicate that such a limitation applies. See 49 USC §§ 13702, 13704; see also *Gaines Motor Lines Inc v Klaussner Furniture Industries Inc*, 734 F3d 296, 305 (4th Cir 2013); *Fracht*, 2021 WL 1026130 at *2; *GMG*, 2010 WL 3718888 at *2. And the "regulations governing motor carriers' collection of rates issued pursuant to chapter 137" are also "expressly limited to cases where a federal tariff is filed." *Gaines Motor Lines*, 734 F3d at 305, citing 49 CFR § 377.101, § 377.203(a)(2). It would be odd if this one section weren't also so bounded.

Gulf Winds fails to allege that any of the cargo at issue was subject to a federal tariff. And so, even assuming that § 13706 provides a federal cause of action, it still can't serve as an independent basis for federal question jurisdiction here.

To the extent that Gulf Winds (perhaps) asserts § 13706 as a cause of action resulting in complete preemption, it fails to satisfy the third *Hoskins* prong. Nothing suggests that Congress intended any cause of action potentially created by § 13706 to be exclusive. To the contrary, Congress expressly stated, "Except as otherwise provided in this part, the remedies provided under this part are *in addition to* remedies existing under another law or common law." 49 USC § 13103 (emphasis added). Beyond this, § 13706 doesn't outline procedures or remedies that govern the cause of action it creates. By comparison, causes of action that the Supreme Court has determined Congress intended to be exclusive "provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial National Bank v Anderson*, 539 US 1, 8 (2003). For example, see the Employee Retirement Income Security Act of 1974, 29 USC § 1001 *et seq*; the Labor Management Relations Act of 1947, 29 USC § 141 *et seq*; and the National Bank Act, 12 USC § 21 *et seq*.

Section 13706 thus cannot serve as the basis for federal question jurisdiction in this case.

8

### 4. Potential for repleading

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit holds that this "evinces a bias in favor of granting leave to amend." *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (quotation omitted). But the decision whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012) (citation omitted). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir 2020), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

Although unlikely, an amended complaint might alter the present determination that subject matter jurisdiction is lacking based on the face of the well-pleaded complaint. Gulf Winds will thus be permitted to seek leave to amend its complaint. But any such motion for leave must address the deficiencies and concerns identified above and will be subject to the dictates of Rule 11(b) of the Federal Rules of Civil Procedure.

Gulf Winds must seek leave to replead by October 15, 2021, if at all.

### 5. Conclusion

The motion to dismiss by Defendants Hydro Precision Tubing USA LLC, Hydro Precision Tubing Monterrey LLC, and Hydro Precision Tubing Monterrey Central LLC pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED. Dkt 16.

The claims asserted by Plaintiff Gulf Winds International Inc against the Hydro Defendants are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on September 29, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge